UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEANNE WRIGHT-PHILLIPS,** <br><br> Plaintiff, <br><br> v. <br><br> **UNITED AIRLINES, INC.,** *et al.*, <br><br> Defendants. | Case No. 20–cv–14609–KM–ESK <br><br><br> OPINION |

**KIEL**, U.S.M.J.

**THIS MATTER** is before the Court on plaintiff Leanne Wright-Phillips's motion for leave to file a second amended complaint (Motion to Amend). (ECF No. 36.) Defendant United Airlines, Inc. (United) filed opposition to the Motion to Amend. (ECF No. 45.) Plaintiff filed a reply brief in further support of the Motion to Amend. (ECF No. 46.) For the following reasons, the Motion to Amend is **GRANTED**.

## BACKGROUND

This case stems from interactions between plaintiff and a United flight attendant on a flight from Los Angeles to Newark (Flight). (ECF No. 19 ¶ 28.) Plaintiff is Black, is a frequent airline traveler, and sometimes experiences anxiety during flights. (*Id.* ¶¶ 15, 18, 19.) She took anxiety medication prescribed by her doctor before the Flight. (*Id.* ¶ 29.) Plaintiff awoke during the Flight due to turbulence, had difficulty breathing, and rang for a flight attendant. (*Id.* ¶¶ 32, 33.) Defendant Madison Roe #1 (Attendant), who is White, responded to the call. (*Id.* ¶¶ 34, 35.)

When plaintiff asked for oxygen, the Attendant became "visibly irritated" and appeared to doubt that plaintiff was having difficulty breathing. (*Id.* ¶ 38.) The Attendant told plaintiff that oxygen would only be provided with medical

clearance. (*Id.* ¶ 39.) Plaintiff then requested such clearance. (*Id.* ¶ 40.) The Attendant left and did not return. (*Id.* ¶¶ 41, 42.)

After several minutes, plaintiff rang again. (*Id.* ¶¶ 42, 43.) The Attendant returned to plaintiff's row and was "clearly agitated." (*Id.* ¶¶ 44, 45.) Plaintiff asked whether the medical clearance had been obtained as she needed oxygen "right away." (*Id.* ¶¶ 45, 46.) The Attendant repeated loudly that she "needed to get medical clearance." (*Id.* ¶ 47.) Plaintiff asked whether the Attendant had even attempted to obtain the clearance. (*Id.* ¶ 49.) The Attendant left again. (*Id.* ¶ 51.)

About five minutes later, the Attendant returned with two crew members, but without the requested oxygen. (*Id.* ¶ 52.) The Attendant once again announced the need for medical clearance. (*Id.* ¶ 53.) Plaintiff repeated she was having difficulty breathing and began experiencing an anxiety attack. (*Id.* ¶¶ 55, 57, 60.) Since oxygen was not brought to her, plaintiff resorted to taking more medication to lessen her anxiety, even if "contrary to her medication prescription." (*Id.* ¶¶ 59, 63.) Eventually, and in response to an in-flight announcement, a physician tended to plaintiff. (*Id.* ¶¶ 61, 64–68.)

While the physician was treating plaintiff, the Attendant—who, by this point, was holding an oxygen tank—proceeded to harangue plaintiff about the medical clearance protocol. (*Id.* ¶¶ 64, 67, 68.) When plaintiff criticized the Attendant's behavior and asked to be left alone, the Attendant threatened to "deboard the plane." (*Id.* ¶¶ 69, 70.) The Attendant then attempted to hand plaintiff the oxygen tank, but plaintiff declined. (*Id.* ¶ 72.) In this lawsuit, plaintiff alleges that the Attendant's insistence on medical clearance for the use of supplemental oxygen was a pretext for racial discrimination. (*Id.* ¶ 81.)

The Attendant's hostility toward plaintiff persisted. The Attendant returned to plaintiff's row, placed her hand on the forearm of a White passenger, and asked, "are you okay after that?" (*Id.* ¶ 74.) Later, during beverage service, the Attendant never served plaintiff, but served a White passenger in the same

2

row.  (*Id.* ¶¶ 82, 83.)  Another flight attendant, who is Black, served plaintiff. (*Id.* ¶ 84.)

When the Flight landed in Newark, Port Authority police boarded the plane and escorted plaintiff into the terminal.  (*Id.* ¶ 87.)  An officer advised plaintiff that the Flight crew reported her as a "disturbance."  (*Id.* ¶ 91.)  Another passenger on the Flight, who is White, told Port Authority police there was no reason to question plaintiff or escort her off the plane.  (*Id.* ¶ 101.)  Plaintiff was detained, but was released without being charged.  (*Id.* ¶¶ 92, 102.)  Plaintiff alleges the false report by United flight crew to Port Authority police was a pretext for racial discrimination.  (*Id.* ¶ 99.)

## PROCEDURAL HISTORY

Plaintiff filed the complaint against United, Madison Roe #1 (*i.e.*, Attendant), and John Doe #1 (Pilot) on October 17, 2020.  (ECF No. 1.)  After United filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) (ECF Nos. 9, 10), plaintiff filed a cross-motion to amend the complaint (ECF No. 14). On January 14, 2021, I administratively terminated the motion to dismiss and granted the cross-motion to amend.  (ECF No. 18.)

Plaintiff filed the first amended complaint against United, the Attendant, and the Pilot on January 22, 2021.  (ECF No. 19.)  The first amended complaint asserted the following causes of action: (1) discrimination in air transportation pursuant to 49 U.S.C. § 40127 (count one); (2) discrimination in places of public accommodation pursuant to 42 U.S.C. § 2000a (count two); (3) violation of civil rights under color of state law pursuant to 42 U.S.C. § 1983 (count three); (4) denial of equal rights under the law pursuant to 42 U.S.C. § 1981 (count four); (5) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 (count five); (6) New Jersey Law Against Discrimination pursuant to N.J.S.A. § 10:5-1, *et seq.* (count six); (7) false imprisonment (count seven); (8) negligent infliction of

3

emotional distress (count eight); (9) intentional infliction of emotional distress (count nine); (10) negligent training (count ten); (11) defamation (count eleven); and (12) *respondeat superior* (count twelve). (*Id.* pp. 12, 16, 17, 19, 21, 23, 25, 28, 31, 33, 35, 37.)

United filed a second motion to dismiss, which Plaintiff opposed. (ECF Nos. 20, 21, 23.) District Judge Kevin McNulty granted the second motion in part, and denied it in part, on April 1, 2021. (ECF Nos. 26, 27.) Judge McNulty dismissed counts one, two, three, five, seven, and twelve of the first amended complaint. (ECF No. 26 p. 5; ECF No. 27.) As such, the remaining causes of action are: denial of equal rights under the law pursuant to 42 U.S.C. § 1981 (count four); New Jersey Law Against Discrimination pursuant to N.J.S.A. § 10:5-1, *et seq.* (count six); negligent infliction of emotional distress (count eight); intentional infliction of emotional distress (count nine); negligent training (count ten); and defamation (count eleven). (ECF No. 26 p. 5.)

## PARTIES' ARGUMENTS

### I. MOTION TO AMEND

Plaintiff seeks to replace "Madison Roe #1" with "Madison Martin," and "John Doe #1" with "Capt. Martin Dreger." (ECF No. 36-1 p. 4.) No other changes to the second amended complaint are proposed. (*Id.*) Plaintiff explains that the names of the Attendant and Captain were identified in United's Rule 26 disclosures. (*Id.*) Plaintiff argues that leave to amend should be "freely given" under Rule 15(a)(2), and that the proposed amendment is not time-barred. (*Id.* p. 5.)

### II. UNITED'S OPPOSITION

According to United, plaintiff's request to amend "is futile as [she] has not demonstrated through her … pleading[s] that personal jurisdiction over both Capt. Dreger and Ms. Martin is proper or that her Second Amended Complaint could withstand a Motion to Dismiss[.]" (ECF No. 45 p. 8.) United devotes a

4

significant portion of its opposition to challenging the Court's exercise of personal jurisdiction over Martin and Dreger (collectively, United Employees). (*Id.* pp. 9–15.) As such, United argues that, because claims against the United Employees would be dismissed for lack of personal jurisdiction, adding the United Employees to the new complaint would be futile. (*Id.* pp. 8, 9, 15.)

United also asserts that plaintiff filed the Motion to Amend in bad faith. First, United argues that plaintiff's bad faith is demonstrated by the inclusion of previously dismissed causes of action in the new pleading.[1] (*Id.* pp. 15, 16; *see also* ECF No. 36-1 pp. 6–9.) Second, United believes plaintiff is acting in bad faith because it "has provided the names of [the United Employees], their contact information care of legal counsel[,] and committed to producing such witnesses upon the request of [plaintiff]." (ECF No. 45 p. 8.) According to United, "[a]ny further inclusion of such witnesses falls into the category of unnecessary harassment." (*Id.*)

Other arguments are advanced in United's opposition. If the proposed amendment is permitted, United anticipates filing another motion to dismiss, which would entail additional costs and burden the Court. (*Id.* pp. 16, 17.) Furthermore, the inclusion of the United Employees is "unnecessary" because adding them personally "achieves no necessary legal objective[.]" (*Id.* p. 17.) Because they are "an extension" of United, the United Employees "are subsumed within any Complaint lodged against United." (*Id.*)

### III. PLAINTIFF'S REPLY

In her reply brief, plaintiff disputes United's futility argument based on the Court's purported lack of jurisdiction over the United Employees. (ECF No. 46

---

[1] In support of the Motion, plaintiff only submitted excerpts of the proposed second amended complaint which contained changes, as opposed to track-changed and clean versions of the proposed new pleading in its entirety. Thus, United presumes that the balance of the proposed second amended complaint contains the previously dismissed claims.

pp. 7–9.) As to the previously dismissed claims, plaintiff "acknowledges" their dismissal and "concedes those [dismissed] counts are not revived against" the United Employees.[2] (*Id.* p. 10.)

Plaintiff points out that her inability to include the United Employees in prior pleadings "is solely attributable to United[,]" which "declined to provide their names voluntarily and only did so in its Rule 26 disclosures." (*Id.* pp. 5, 10.) As such, plaintiff denies that its proposed amendment is made in bad faith. (*Id.* p. 10.) Plaintiff also contends that "all alleged tortfeasors can be joined as defendants regardless of whether their employer can be held liable under the doctrine of *respondeat superior*." (*Id.* p. 11.)

## APPLICABLE LAW

Rule 15 "embodies a liberal approach to pleading." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) (citation omitted). "The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). "This standard encompasses a broad range of equitable factors."[3] *Arthur*, 434 F.3d at 203 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Under *Foman*, in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman*, 371 U.S. at 182).

"A court will consider an amendment futile if it 'is frivolous or advances a claim or defense that is legally insufficient on its face.'" *Jemas v. CitiMortgage, Inc.*, No. 12-03807, 2013 WL 1314729, at *4 (D.N.J. Mar. 28, 2013) (quoting

---

[2] Plaintiff has offered to "further amend" the proposed second amended complaint "to eliminate the dismissed causes of action" (ECF No. 46 p. 10), though claims "there is no rule or practice requirement that plaintiffs file amended complaints eliminating dismissed claims" (*id.* p. 11).

[3] The court may also ground its decision "on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Mullin v. Balicki*, 875 F.3d 140, 149–50 (3d Cir. 2017).

6

*Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)). In determining whether an amendment is "insufficient on its face," the court considers the Rule 12(b)(6) motion to dismiss standard. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Harrison Beverage*, 133 F.R.D. at 468.

The grant or denial of leave to amend is a matter committed to the sound discretion of the court. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). "The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Arthur*, 434 F.3d at 206 (citing *Foman*, 371 U.S. at 182). The Third Circuit also recognizes the "strong liberality in allowing amendments under Rule 15 … to ensure that claims will be decided on the merits rather than on technicalities." *Clinton v. Jersey City Police Dep't*, No. 07-05686, 2017 WL 1024274, at *2 (D.N.J. Mar. 16, 2017).

## DECISION

### I. FUTILITY

United argues that the addition of the United Employees would be futile. However, "current parties 'unaffected by [the] proposed amendment' do not have standing to assert claims of futility on behalf of proposed defendants." *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-05592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (quoting *Clark v. Hamilton Mortg. Co.*, No. 07-00252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008)). "Rather, current parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of undue delay and/or prejudice." *Id.* (citing *Nat'l Indep. Theatre Exhibitors, Inc. v. Charter Fin. Grp., Inc.*, 747 F.2d 1396, 1404 (11th Cir.

7

1984)). In addition, "[p]roposed defendants 'do not have standing to oppose' a motion to amend 'because they are not yet named parties[.]'" *Id.* (quoting *State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007)).

Here, United lacks standing to challenge the Motion to Amend on the basis of futility. While United devotes portions of its opposition to raising personal jurisdiction arguments on behalf of the United Employees, United cannot advance futility arguments on behalf of new defendants. *Custom Pak Brokerage*, 2014 WL 988829, at *2. "To be sure, some courts have allowed a defendant to assert futility on behalf of a prospective defendant, but in these cases there was usually a 'close legal relationship' between the two." *Tapjets Inc. v. United Payment Servs., Inc.*, No. 19-03740, 2021 WL 3129886 (E.D.N.Y. July 22, 2021) (quoting *N.Y. Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F.Supp.3d 216, 250 (S.D.N.Y. 2020)). *Tapjets* and *N.Y. Wheel Owner* both cite to *Agri Star Meat & Poultry, LLC v. Moriah Cap., L.P.*, No. 10-01019, 2011 WL 1743712, at *7 (N.D. Iowa May 6, 2011) for the proposition that "a current defendant may assert futility [arguments] on behalf of a prospective defendant" in opposing a motion to amend where there is a "close legal relationship" between the current defendant and prospective defendant.

*Agri Star* involved the incomplete sale of chicken-raising facilities in Iowa. *Agri Star*, 2011 WL 1743712, at *1. The plaintiff sued defendant Moriah Capital, L.P., learned that "additional entities" owned by the same individual, Greg Zilberstein, fraudulently transferred sale property, then moved to add the additional entities and the owner as new defendants. *Id.* at *2. The *Agri Star* Court observed that the proposed entity-defendants shared "common ownership and control" through Zilberstein, who was involved in sale negotiations. *Id.* at *4. As such, it found that "the four prospective defendants have a close legal relationship with the current Defendant" and anticipated that all defendants would be represented by the same attorneys. *Id.* at *7.

8

As a preliminary matter, United's opposition does not argue that United and the United Employees have the kind of "close legal relationship" found in *Agri Star*. In any event, while the *Agri Star* Court did not define "close legal relationship," the circumstances that persuaded it to consider futility arguments by a current defendant on behalf of a prospective defendant are absent here. United does not suggest that the United Employees and United are alter egos. Rather, the United Employees were simply employed by United. Since the parties have not addressed the question of whether an employer may assert futility arguments on behalf of prospective employees sought to be joined as additional defendants, I need not reach this particular issue.

Moreover, plaintiff contends she may sue an employee and the employer in a single lawsuit, or proceed against them separately. (ECF No. 46 pp. 11, 12 (citations omitted).) "Under the doctrine of *respondeat superior*, an employer is liable to a third party for the torts of one of its employees if that employee is acting within the scope of his or her employment." *Planet Ins. Co. v. Anglo Am. Ins. Co.*, 312 N.J. Super. 233, 240 (App. Div. 1998). Indeed, "it is not unusual for a plaintiff to name the employer that may be liable under *respondeat superior* and the employee who engaged in the conduct at issue." *Acerra v. Whirlpool Corp.*, No. 09-05402, 2010 WL 1265198, at *1 (D.N.J. Mar. 26, 2010); *see also Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 762 (1989) (holding that a defendant employee who performs an allegedly tortious act may still be found individually liable, even if the employee was acting on the defendant employer's behalf and realized no personal benefit). Thus, joining the United Employees "is advisable even if the claims asserted against [them] are not ultimately successful and if [United] is ultimately found to be completely liable." *Bae v. Va. Transp. Corp.*, No. 20-02354, 2020 WL 6268675, at *2 (D.N.J. Oct. 26, 2020) (citing *Lappe v. Target Corp.*, No. 15-00007, 2016 WL 6305949, at *6 (D.N.J. Oct. 27, 2016) (holding that if an injury is caused by an employee's negligent conduct during the course of his employment, then a plaintiff may choose to bring an action against

9

the employee and the employer jointly, even if the negligence complained of is the same)).

## II. BAD FAITH

United otherwise argues that the proposed amendment is sought in bad faith. (ECF No. 45 p. 8.) I do not find that plaintiff acted in bad faith. "[T]he question of bad faith[] requires that we focus on the plaintiffs' motives for not amending their complaint … earlier[.]" *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Here, plaintiff claims she did not know the identities of the fictitious defendants before United's Rule 26 disclosures were served. (ECF No. 46 pp. 5, 10.) Plaintiff's explanation for the timing of the Motion to Amend is reasonable. Additionally, United's argument that the inclusion of previously dismissed claims in the new pleading constitutes "bad faith" by plaintiff is rejected. Plaintiff acknowledges that those claims remain dismissed and will eliminate the dismissed claims from the second amended complaint. (ECF No. 46 p. 10.)

## III. OTHER FACTORS

Although United only possesses standing to challenge the amended pleading directed to the United Employees on the basis of prejudice or undue delay, *Custom Pak Brokerage, LLC*, 2014 WL 988829, at *2, United does not appear to advance or develop arguments based on either of these *Foman* factors. While United identifies unfair prejudice to the non-moving party as a basis for denying leave to amend (ECF No. 45 p. 5), nowhere does United explain how it would actually be unfairly prejudiced by the proposed amendment. Elsewhere, United broadly asserts that the amendment, to the extent it prompts another motion to dismiss, will delay this matter. (*Id.* p. 17.) But United does not go so far as to say the delay would be "undue." And "delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

10

Finally, United discusses the costs and burden on the Court resulting from the additional motion practice necessitated by plaintiff's further amendment. Here, the proposed amendment merely entails the substitution of two fictitious defendants with the names and identities of the United Employees. *See Acerra*, 2010 WL 1265198, at *1. The proposed amendment does not include new causes of action, or new allegations. While the motion papers submitted by the parties preview their respective arguments concerning personal jurisdiction over the United Employees, at this juncture, any speculative concerns over the time and expense associated with further motion practice should properly yield to the liberal standard embodied by Rule 15.

## CONCLUSION

For all the foregoing reasons, the Motion to Amend is **GRANTED**. A separate order accompanies this Opinion.

 */s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**

Date: August 27, 2021