UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEANNE WRIGHT-PHILLIPS,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED AIRLINES, INC., MADISON MARTIN, and MARTIN DREGER,<br><br>    Defendants. | Civ. No. 20-14609 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Leanne Wright-Phillips experienced an anxiety attack and had difficulty breathing while she was a passenger aboard a United Airlines flight from Los Angeles to Newark. She requested oxygen from flight attendant Madison Martin, but Martin at first refused, stating that she needed "medical clearance" to provide it. Plaintiff claims that Martin was hostile, made little effort to obtain such medical clearance, and offered oxygen to Plaintiff only after approximately 20 minutes had elapsed. When the plane landed in Newark, New Jersey, Port Authority ("PA") police officers escorted Wright-Phillips from the plane and detained her, stating that United employees had notified them that she had caused a disturbance on the flight. Plaintiff alleges that the conduct of United's employees was motivated by racial bias, and she brings civil rights and tort claims against United, Martin, and the plane's pilot, Martin Dreger.

This Opinion should be read in conjunction with the Court's prior opinion granting in part and denying in part United's motion to dismiss the Complaint in its original form. (*See* DE 26.) Now before the Court is the motion of Martin and Dreger to dismiss Plaintiff's Second Amended Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (DE 62). For the following reasons, the motion is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND[1]

### A. Facts

On October 26, 2019, Ms. Wright-Phillips was a passenger on a United Airlines flight from Los Angeles, California to Newark, New Jersey. (2AC ¶ 29.) She has long suffered from anxiety during air travel, and so prior to takeoff, she took prescribed anxiety medication and soon fell asleep. (*Id.* ¶¶ 20-22, 30.) She awoke while the plan was flying through "moderate to severe" turbulence and, as a result, began experiencing anxiety and having difficulty breathing. (*Id.* ¶¶ 31-33.) When she had experienced anxiety during prior flights, Ms. Wright-Phillips had obtained supplemental oxygen from flight personnel, and so she pressed the button near her seat to summon the flight attendant, now identified as Madison Martin. (*Id.* ¶¶ 23-25, 34-35.)

Wright-Phillips asked Martin for supplemental oxygen, stating that she was beginning to have an anxiety attack. She alleges that Martin refused, stating that "medical clearance" was needed before oxygen could be supplied. (2AC ¶¶ 38-40.) Martin then allegedly left the vicinity of Plaintiff's seat, was summoned again soon after, and again refused to provide Plaintiff with oxygen. Martin continued to cite the need for medical clearance but did not state whether such clearance had been sought. (*Id.* ¶¶ 43-51.) Martin again left and then returned with other unidentified flight crew members. She told Wright-Phillips again that medical clearance was necessary. Approximately 20 minutes had elapsed since Plaintiff first informed Martin about her difficulty breathing.

---

[1]     Certain citations to the record are abbreviated as follows:

"DE" refers to the docket entry numbers in this case

"2AC" refers to the Second Amended Complaint (DE 51)

"MTD" refers to the Memorandum in Support of Defendants Martin and Dreger's Motion to Dismiss Plaintiff's Second Amended Complaint. (DE 62-2.)

"Op." refers to Plaintiff's Memorandum of Law in Opposition to Defendants Martin and Dreger's Motion to Dismiss. (DE 64.)

"Reply" refers to Defendants Martin and Dreger's Reply in Support of their Motion to Dismiss. (DE 65.)

(*Id.* ¶¶ 56-60.) Plaintiff's anxiety at this point intensified, triggering a "proper anxiety attack" and impelling her to take additional anxiety medication, beyond what she was prescribed. (*Id.* ¶¶ 61, 64.) Shortly after leaving the area of Plaintiff's seat, Martin made an announcement over the plane's public address system asking if any passenger on board was a medical professional. "[S]everal minutes later," crew members approached Plaintiff's seat with a passenger who identified himself as a doctor. (*Id.* ¶¶ 62-63, 65.) After the doctor spoke briefly with Plaintiff and reviewed her prescription, Martin offered Plaintiff supplemental oxygen. Plaintiff declined the oxygen because her additional anxiety medication had taken effect. (*Id.* ¶¶ 66-73.)

It may be inferred from the complaint that someone on the plane radioed ahead in some manner. (*See* n.3, *infra.*) When the plane landed at Newark Airport, officers from the New Jersey Port Authority boarded, escorted Plaintiff into the terminal, and detained her, explaining that the United flight crew had reported her as a "disturbance." (2AC ¶¶ 87-93.) Plaintiff was ultimately released and was not charged. (*Id.* ¶ 103.)

Plaintiff alleges that the refusal of United personnel to give her supplemental oxygen promptly, their hostility in speaking with her, and their report to Port Authority officers that she caused a disturbance were motivated by racial bias. Ms. Wright-Phillips identifies as Black and alleges that Martin is white. She claims that similarly situated white passengers have obtained supplemental oxygen without a demand for medical clearance. (*Id.* ¶¶ 16, 36, 80-82.)

### B. Procedural History

Plaintiff filed suit on October 17, 2020, asserting a variety of civil rights and torts claims against United and the then-unidentified flight attendant and pilot, now identified as Martin and Dreger. (DE 1) On April 1, 2021, I granted in part United's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), allowing Plaintiff to proceed on six of her twelve claims against the airline. (DE 26, 27.)

Plaintiff's currently operative Second Amended Complaint articulates revised and renumbered claims for (1) denial of equal rights in violation of 42 U.S.C. § 1981; (2) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to 10:5-50; (3) negligent infliction of emotional distress ("NIED"); (4) intentional infliction of emotional distress ("IIED"); (5) negligent training; and (6) defamation. (2AC ¶¶ 105-98.)

On November 15, 2021, Martin and Dreger filed the motion to dismiss that is now before the Court, arguing that this Court lacks personal jurisdiction over either of them and that the complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). (MTD at 6-20.)

## II.  DISCUSSION AND ANALYSIS
### A. Standard of Review

In advance or in lieu of an answer, a defendant may move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The issue is ultimately a factual one, as to which the plaintiff has the burden:

> A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004) (Scirica, C.J., concurring in part) (quoting *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990)).

Where, as here, there has not yet been discovery or an evidentiary hearing, the plaintiff receives the benefit of what amounts to a Rule 12(b)(6) standard:

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction

> over the moving defendants. However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.

*Miller Yacht Sales*, 384 F.3d at 97 (citations omitted); *see also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) ("Because the District Court did not hold an evidentiary hearing on personal jurisdiction, we take [plaintiff]'s factual allegations as true.").

### B. Personal Jurisdiction

To assess whether a district court has personal jurisdiction over a party, that court must undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court "must apply the relevant state long-arm statute to see whether it permits the exercise of personal jurisdiction." *Id.* at 259. Second, "the court must apply the precepts of the Due Process Clause of the [federal] Constitution." *Id.* Here, the first step collapses into the second, because "the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.*; *see also Miller Yacht Sales*, 384 F.3d at 96 (describing the jurisdiction provided by the New Jersey long-arm statute as "coextensive with the due process requirements of the United States Constitution."). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction: specific and general. As Plaintiff prudently concedes, only specific jurisdiction is implicated by the allegations against Martin and Dreger, who are domiciliaries of other states. (*See* MTD at 6–7; Op. at 6-7.) A court may have specific jurisdiction when the defendant has contacts with the forum, and the plaintiff's claims "arise out of

or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted). Three elements are traditionally used to evaluate specific jurisdiction: (1) the defendant must have "purposefully directed [its] activities" at the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted); (2) the litigation must "arise out of or relate to" at least one of those activities, *Helicopteros*, 466 U.S. at 414; and (3) if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice,'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). *See also O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F. 3d 312, 317 (3d Cir. 2007).

However, where a plaintiff alleges an intentional tort, specific jurisdiction is evaluated according to the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* test requires a plaintiff to show

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus.*, 155 F.3d at 256, 265-66. *Calder*'s modification of the traditional test reflects that in certain circumstances, "the unique relations among the defendant, the forum, the intentional tort, and the plaintiff" can establish sufficient contacts with the forum for the exercise of personal jurisdiction to be appropriate, even when such contacts might appear insufficient under the "traditional minimum contacts analysis." *IMO Indus.*, 155 F.3d at 265.

I therefore look not only to the specific contacts of each Defendant, but also to the appropriate jurisdictional standard governing each claim.[2] *See Danziger*, 948 F.3d at 130.

---

[2]    I reject Plaintiff's assertion that that I impliedly found that specific jurisdiction existed over Martin and Dreger when I partially denied United's prior motion to

Claims 1, 2, and 3 (42 U.S.C. § 1981, NJLAD, and NIED) are governed by the traditional minimum contacts analysis. *See O'Connor*, 496 F.3d at 317 n.2; *see also Gary v. F.T.C.*, 526 F. App'x 146, 150 (3d Cir. 2013) (applying the traditional minimum contacts analysis to claims under § 1981); *Laverty v. Cox Enters., Inc.*, No. CV181323FLWTJB, 2019 WL 351905, at *5 (D.N.J. Jan. 29, 2019) (applying the traditional minimum contacts analysis to NJLAD claims). Claims 4 and 6 (IIED and defamation), as intentional torts, are governed by the effects test of *Calder*. *See* 465 U.S. at 789; *see also DeRosa v. McKenzie*, No. 2:16-CV-07516 (JLL), 2017 WL 1170827, at *5 (D.N.J. Mar. 27, 2017) (applying the *Calder* effects test to claims for defamation and IIED).

Plaintiff alleges that all her claims against Martin and Dreger flow from reports allegedly made or relayed to the New-Jersey-based PA police officers by United personnel. She argues that those reports, which led to Plaintiff's detention on the ground in New Jersey, constitute sufficient contacts between the defendants, New Jersey, and the present suit. (Op. at 3-5.) Martin and Dreger counter that all of the alleged conduct at issue, including the radioing of any report, occurred in the air, outside of New Jersey.[3] Such actions, they

---

dismiss pursuant to Fed. R. Civ. P. 12(b)(6), allowing her to proceed on her current causes of action. (*Id.*; *see also* DE 26.) United did not raise the issue of personal jurisdiction in moving for that dismissal and at that time, Martin and Dreger were John Doe defendants who had yet been identified. (*See* DE 26 at 1.)

[3]   Plaintiff plausibly alleges that such a report was made, because the PA police were there to meet her when the plane landed. She also alleges that one of the responding PA police officers told her that the flight crew had "reported her as a 'disturbance.'" (2AC ¶ 92) Understandably, she is unaware of the exact means by which any such report was made, but alleges on information and belief that Defendants made such a report and "ordered or requested" that she be detained and questioned. (*Id.* ¶ 95)  [Note cont'd on following page.]

[Cont'd from previous page.] In support of the motion, Capt. Dreger acknowledges that he received a report of disruption in the cabin, radioed United "dispatch" (location unknown), and requested that the police meet the plane upon landing. That radio call, he states, occurred over Chicago, well before the plane entered New Jersey airspace. (Dreger Cert. ¶ 18, DE 62-4). It may be inferred that dispatch notified the PA police, but this is nowhere stated.

urge, do not amount to a purposeful targeting of New Jersey or establish that Plaintiff's claims occurred in New Jersey. (MTD at 17-18; Reply at 5-7.)

As outlined below, Plaintiff has made a prima facie showing that the exercise of personal jurisdiction is proper over Martin, because her alleged conduct is central to Plaintiff's claims and was ultimately directed at New Jersey. As to Dreger, however, the Second Amended Complaint provides almost no detail, even granting all of Plaintiff's allegations as true and interpreting the facts in her favor. *See Miller Yacht Sales*, 384 F.3d at 97. Accordingly, while Ms. Wright-Phillips may proceed on her claims against Martin, I will dismiss her claims against Dreger.

### 1. Claims Governed by the Traditional Minimum Contacts Analysis (Counts 1, 2, and 3)

To determine whether personal jurisdiction may be exercised over Plaintiff's 42 U.S.C. § 1981, NJLAD, and NIED claims, I must first assess whether the conduct underlying these claims was "purposefully directed" at New Jersey. Little of the conduct underlying Plaintiff's claims actually occurred in New Jersey: the verbal exchanges between Plaintiff and Martin regarding oxygen and, presumably, any radio report regarding Plaintiff, all occurred before the plane reached New Jersey. (*See* 2AC ¶ 31; DE 62-3 ¶¶ 17-19; DE 62-4 ¶¶ 16-18). Nevertheless, assuming as I must that Plaintiff's allegations are true, the events on the plane culminated in Martin's reporting that Wright-Phillips had caused a disruption. The purpose of Martin's reporting Plaintiff as a security concern was to set in motion the process that resulted in Plaintiff's wrongful detention by New Jersey-based PA police officers upon the flight's arrival in Newark. The result (Martin's *intended* result, according to Plaintiff) was that the PA officers received the report and detained Plaintiff in Newark. Plaintiff also alleges that, as the situation escalated, Martin threatened to "deboard" the plane. (SAC ¶ 72) That threat, though less than clear, would further corroborate that Martin then possessed some intent with respect to

what would occur when the plane landed in New Jersey.[4] That detention is part and parcel of the claims for discrimination and NIED, and it was directed toward the New Jersey forum.

The remaining two requirements for personal jurisdiction are sufficiently alleged as to Martin. Plaintiff's claims of discrimination and NIED are part and parcel of Martin's salient contacts with New Jersey—the alleged intentional targeting of the forum as the situs of harm—and so clearly "arise out of or relate to" Martin's relevant activities. Moreover, I find that the exercise of jurisdiction over Martin would "comport with fair play and substantial justice" since her purposeful triggering of law enforcement activity in New Jersey would put Martin on notice that she might be sued here if that conduct was wrongful.

Defendant Dreger, however, stands on a different footing. The complaint fails to plead facts suggesting that Capt. Dreger engaged in tortious conduct purposefully directed at New Jersey. Indeed, the complaint says little about Dreger or his role. The allegations against Dreger consist of routine biographical information (*e.g.*, that Dreger worked as a pilot for United) or fact-free legal conclusions that I need not accept (*e.g.*, that Dreger "conspired" with Martin and other United employees). (*See e.g.*, 2AC ¶¶ 8, 37, 98.) Giving the complaint a generous reading, it might be inferred that Dreger as captain was responsible for radioing ahead. (He has confirmed this. *See* n. 3, *supra*.) There is no factual allegation, however, that Capt. Dreger knew anything about the events in the cabin of the plane, beyond there having been a disruption; that he was aware of Ms. Wright-Phillips's medical condition; that he had any involvement in the decisions regarding administration of oxygen; that he was familiar with Plaintiff's racial or ethnic background; or that he had any motivation beyond passing along a concern that had been stated to him. In

---

4   Presumably, Martin meant that when the plane landed in New Jersey, one of two things would occur: Either Wright-Phillips would be removed separately, or she would be detained while the other passengers disembarked. As it happened, according to the complaint, PA officers boarded the plane and removed Ms. Wright-Phillips. (2AC ¶¶ 88–90)

short, he acted as no more than a conduit, if that. Plaintiff has not sufficiently alleged that Dreger had any wrongful racial motivation or that he purposefully directed any tortious conduct toward the State of New Jersey.[5] The requisite connection among the alleged torts, Capt. Dreger, and this State are lacking.

Accordingly, I will grant Defendants' motion to dismiss Counts 1, 2, and 3 of Plaintiff's complaint insofar as they are asserted against Dreger, but allow those claims to proceed against Martin.

### 2. Claims Governed by the *Calder* Effects Test (Counts 4 and 6)

Personal jurisdiction over Martin and Dreger with respect to Count 4 (IIED) and Count 6 (defamation),[6] follows a similar analytical path, and arrives at a similar result. The analysis is refracted, however, through the "slightly refined version" of the traditional minimal-contacts analysis, namely the *Calder* effects test designed for intentional torts. *See O'Connor*, 496 F.3d at 317 n.2.

At the first step, Plaintiff has sufficiently alleged that Martin committed intentional torts. As a result, she suffered adverse consequences in New Jersey such that this state "can be said to be the focal point of the harm suffered." Plaintiff's flight was bound for New Jersey, Martin made (allegedly false) statements intended to result in the summoning of New Jersey-based police officers, and Plaintiff was detained and questioned by those New Jersey officers upon her arrival in this state. Though these two claims arise from the events on the plane, they center on Plaintiff's detention in New Jersey and statements made to individuals in New Jersey. Even assuming that the tortious conduct originated or took place outside of New Jersey, the harm it caused was focused on and consummated within this State. New Jersey is thus the "focal point" of the harm suffered and the tortious activity. As already outlined in assessing

---

[5]     In this respect, the 12(b)(2) analysis may be seen to merge with a 12(b)(6) analysis. The complaint fails to allege a claim against Dreger that relates sufficiently to New Jersey primarily because it fails to allege a claim against him at all.

[6]     Count 5 is asserted against United only.

10

claims governed by the traditional minimum contacts analysis, Martin reported Wright-Phillips as a security concern, allegedly falsely and with the intent that New Jersey-based police would detain Plaintiff upon the flight's arrival in Newark. Such purposeful targeting of the forum state underlies Claims 4 and 6, and is sufficient to permit an inference that the forum is the "focal point" of the alleged intentional torts.

Again, the picture is different with respect to Capt. Dreger. Beyond Plaintiff's unsupported allegation that Dreger "conspired" with Martin and other United employees, there is simply no factual allegation of Dreger's culpable involvement in the events or commission of an intentional tort. Assuming that Capt. Dreger radioed in the flight attendant's account (*see* n.3, *supra*), there is no indication that he did so with tortious intent, with knowledge of its alleged falsity, or for the purpose of triggering tortious acts by the PA police. (*See* DE 62-4 ¶¶ 17-19.)

Accordingly, I find that personal jurisdiction may properly be exercised over Martin for Claims 4 and 6 and will deny Defendants' motion to dismiss the claims against her. However, I will grant the motion to dismiss Counts 4 and 6 insofar as they are directed against Dreger.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED** with respect to the claims against Dreger and is **DENIED** with respect to the claims against Martin.

A separate order will issue.

Dated: April 27, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**